

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. **10-20547** CR-UNGARO

18 U.S.C. § 1349
42 U.S.C. § 1320a-7b(b)(1)
42 U.S.C. § 1320a-7b(a)(2)
18 U.S.C. § 2
18 U.S.C. § 982

MAGISTRATE JUDGE
SIMONTON

**UNITED STATES OF AMERICA**

**vs.**

**JORGE DIEPPA,**
**DIANA SANABIA,**
**DAISY SANTOS,**
**YANISLEY CHAO,**
**MARLENE MAGADAN,**
**MARIA PEREZ,**
**ROBERTO RODRIGUEZ,**
**ALBERTO ALVAREZ,**
**LEONARDO MALAGON, and**
**ALFREDO ZAYAS,**



FILED by _____ D.C.

JUL 15 2010

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

                    **Defendants.**
_____/

### INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.      The Medicare Program ("Medicare") was a federal healthcare program providing

benefits to persons who were over the age of 65 or disabled. Medicare was administered by the

United States Department of Health and Human Services ("HHS") through its agency, the

Centers for Medicare & Medicaid Services ("CMS"). Individuals who received benefits under

Medicare where referred to as Medicare "beneficiaries."

2.       Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.       "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), to beneficiaries who required home health services because of an illness or disability that caused them to be homebound. Payments for home health care medical services under Medicare Part A were typically made directly to an HHA or provider based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiary.

4.       Physicians, clinics and other health care providers, including HHAs, that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number."  A health care provider who was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare information number, the services that had been performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who ordered the services.

5.       CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS contracted with different companies to administer the Medicare Part A program throughout different parts of the United States. In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators ("Palmetto") to administer Part A HHA claims. As administrator, Palmetto was to receive, adjudicate and pay, claims submitted by

-2-

HHA providers under the Part A program for home health claims.

### Part A Coverage and Regulations

### Reimbursements

6.     The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits.  A patient qualified for home health benefits only if the patient:

a.     was confined to the home, also referred to as homebound;

b.     was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("POC"); and

c.     the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy; the beneficiary was confined to the home; that a POC for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the POC.

7.     HHAs were reimbursed under the Home Health Prospective Payment System ("PPS").  Under PPS, Medicare paid Medicare-certified HHAs a predetermined base payment for each 60 days that care was needed. This 60-day period was called an "episode of care."  The base payment was adjusted based on the health condition and care needs of the beneficiary.  This adjustment was done through the Outcome and Assessment Information Set ("OASIS"), which was a patient assessment tool for measuring and detailing the patient's condition.   If a beneficiary was still eligible for care after the end of the first episode of care, a second episode

could commence.  There were no limits to the number of episodes of home health benefits a beneficiary could receive as long as the beneficiary remained eligible.

8.      In order to be reimbursed, the HHA would submit a Request for Anticipated Payment ("RAP") and subsequently received a portion of their reimbursement payment in advance. At the end of a 60 day episode, when the final claim was submitted, the remaining portion of the payment would be reimbursed. As explained in more detail below, "Outlier Payments" are additional PPS reimbursements based on visits in excess of the norm.  Palmetto paid Outlier Payments to HHA providers under PPS where the providers' RAP submission established that the cost of care exceeded the established Health Insurance Prospective Payment System ("HIPPS") code threshold dollar amount.

### Record Keeping Requirements

9.      Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficient to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

10.      Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare was a POC that included the physician order for home healthcare, diagnoses, types of services/frequency of visits, prognosis/ rehabilitation potential, functional limitations/activities permitted, medications/treatments/

-4-

nutritional requirements, safety measures/discharge plans, goals, and the physician's signature. Also required was a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services, and an OASIS.

11.     Medicare Part A regulations required provider HHAs to maintain medical records of every visit made by a nurse, therapist, and home health aide to a beneficiary. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any teaching and the understanding of the patient, and any changes in the patient's physical or emotional condition. The home health nurse, therapist and aide were required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records were generally created and maintained in the form of "clinical notes" and "home health aide notes/observations."

### Special Outlier Provision

12.     While payment for each episode of care was adjusted to reflect the beneficiary's health condition and needs, an "outlier" provision existed to ensure appropriate payment for those beneficiaries that had the most extensive care needs, which may result in an Outlier Payment to the HHA. Outlier Payments were additions or adjustments to the payment amount based on an increased type or amount of medically necessary care. Adjusting payments through Outlier Payments to reflect the HHA's cost in caring for each beneficiary, including the sickest beneficiaries, ensured that all beneficiaries had access to home health services for which they

were eligible.

13.    Medicare regulations allowed certified home health agencies to subcontract home health care services to nursing companies, registries, or groups (nursing groups), which would, in turn, bill the certified home health agency. That certified agency would bill Medicare for all services to the patient. The HHA's professional supervision over arranged-for services required the same quality controls and supervision of its own employees.

14.    For insulin-dependant diabetic beneficiaries, Medicare paid for insulin injections by an HHA agency when a beneficiary was determined to be unable to inject their own insulin and the beneficiary had no available care-giver able or willing to inject the beneficiary. Additionally, for beneficiaries for whom occupational or physical therapy was medically necessary, Medicare paid for such therapy provided by an HHA. The basic requirements that a physician certify that a beneficiary be confined to the home or homebound and in need of home health services, as certified by a physician, was a continuing requirement for a Medicare beneficiary to receive such home health benefits.

### Jorge J. Dieppa, M.D., P.A.

15.    Jorge J. Dieppa, M.D., P.A. was a professional association incorporated on or about June 3, 2003, at 3630 SW 128th Avenue, Miami, Florida, that did business in Miami-Dade County, Florida. Through his corporation, **JORGE DIEPPA** practiced as a licensed physician. **JORGE DIEPPA** purported to provide medical services at the following three clinics ("DIEPPA Clinics"): 8660 W. Flagler Street, Suite 110, Miami, Florida, 8300 W. Flagler Street, Suite 230, Miami, Florida and 8000 W. Flagler Street, Suite 206, Miami, Florida.

-6-

## The Defendants

16.     Defendant **JORGE DIEPPA** was a resident of Miami-Dade County, Florida, a licensed physician in the State of Florida, and worked as a physician at the DIEPPA Clinics. From in or around October 2006, through in or around February 2009, **JORGE DIEPPA,** through the DIEPPA Clinics, referred and signed prescriptions, medical certifications and POCs for approximately 321 beneficiaries for home health services, resulting in approximately $18,740,475 being billed to Medicare for purported home health services, of which approximately $11,878,061 was paid.

17.     Defendant **DIANA SANABIA** was a resident of Miami-Dade County, Florida, and a licensed registered nurse ("R.N.") who purportedly provided home health services to Medicare beneficiaries referred for home health services through the DIEPPA Clinics, as ordered by **JORGE DIEPPA. SANABIA** also recruited Medicare beneficiaries to be referred for home health services through the DIEPPA Clinics.

18.     Defendant **DAISY SANTOS** was a resident of Miami-Dade County, Florida, and a licensed R.N. who purportedly provided home health services to Medicare beneficiaries referred for home health services through the DIEPPA Clinics, as ordered by **JORGE DIEPPA. SANTOS** also recruited Medicare beneficiaries to be referred for home health services through the DIEPPA Clinics.

19.     Defendant **YANISLEY CHAO** was a resident of Miami-Dade County, Florida, and a licensed practical nurse ("L.P.N.") who purportedly provided home health services to Medicare beneficiaries referred for home health services through the DIEPPA Clinics, as ordered by **JORGE DIEPPA. CHAO** also recruited Medicare beneficiaries to be referred for home

health services through the DIEPPA Clinics.

20.     Defendant **MARLENE MAGADAN** was a resident of Miami-Dade County, Florida, and a licensed R.N. who purportedly provided home health services to Medicare beneficiaries referred for home health services through the DIEPPA Clinics, as ordered by **JORGE DIEPPA.**

21.     Defendant **MARIA PEREZ** was a resident of Miami-Dade County, Florida, and a licensed R.N. who purportedly provided home health services to Medicare beneficiaries referred for home health services through the DIEPPA Clinics, as ordered by **JORGE DIEPPA.**

22.     Defendant **ROBERTO RODRIGUEZ** was a resident of Miami-Dade County, Florida, and a licensed R.N. who purportedly provided home health services to Medicare beneficiaries referred for home health services through the DIEPPA Clinics, as ordered by **JORGE DIEPPA.**

23.     Defendant **ALBERTO ALVAREZ** was a resident of Miami-Dade County, Florida, and a licensed R.N. who purportedly provided home health services to Medicare beneficiaries referred for home health services through the DIEPPA Clinics, as ordered by **JORGE DIEPPA**.

24.     Defendant **LEONARDO MALAGON** was a resident of Miami-Dade County, Florida, and a L.P.N. who purportedly provided home health services to Medicare beneficiaries referred for home health services through the DIEPPA Clinics, as ordered by **JORGE DIEPPA.**

25.     Defendant **ALFREDO ZAYAS** was a resident of Miami-Dade County, Florida, and a Medicare beneficiary who purportedly received home health services referred through the DIEPPA Clinics, as ordered by **JORGE DIEPPA.**

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1.      Paragraphs 1 through 25 of the General Allegations section of this Indictment are reacted and incorporated by reference as though fully set forth herein.

2.      From in or around October 2006, the exact dates being unknown to the Grand Jury, and continuing through in or around February 2009, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**JORGE DIEPPA,**
**DIANA SANABIA,**
**DAISY SANTOS,**
**YANISLEY CHAO,**
**MARLENE MAGADAN,**
**MARIA PEREZ,**
**ROBERTO RODRIGUEZ,**
**ALBERTO ALVAREZ,**
**LEONARDO MALAGON,**
**and**
**ALFREDO ZAYAS,**

did knowingly and willfully combine, conspire, confederate and agree with each other and with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) causing the submission of false and fraudulent claims to Medicare; (b) soliciting and receiving kickbacks and bribes in exchange for providing false and fraudulent prescriptions, medical certifications and POCs, and for arranging for the use of Medicare beneficiary numbers as the bases of claims filed for home health care; (c) causing the concealment of the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks; and (d) causing the diversion of the proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

## MANNER AND MEANS

The manner and means by which the defendants and other co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

4.      **DIANA SANABIA, DAISY SANTOS, YANISLEY CHAO,** and other co-conspirators, known and unknown, would recruit and pay kickbacks and bribes to Medicare beneficiaries in return for the beneficiaries agreeing to be placed at Miami-area HHAs that would bill Medicare for medically unnecessary home health services.

5.      Co-conspirators at Miami-area HHAs would pay kickbacks to **DIANA SANABIA, DAISY SANTOS,** and **YANISLEY CHAO** in return for recruiting Medicare beneficiaries to be placed at Miami-area HHAs that would bill Medicare for medically unnecessary home health services.

6.      **ALFREDO ZAYAS** and other Medicare beneficiaries would accept kickbacks

and bribes in return for allowing the Medicare program to be billed for home health services that they never received and services that were not medically necessary.

7. Co-conspirators, known and unknown, would send patient recruiters and Medicare beneficiaries to **JORGE DIEPPA** and another physician, Roberto Rodriguez, to obtain prescriptions for home health services and signed POCs that were not medically necessary.

8. **JORGE DIEPPA** would work as a medical doctor at the DIEPPA Clinics, where he would refer Medicare beneficiaries to home health agencies for expensive home health services that were not medically necessary.

9. **JORGE DIEPPA** would prescribe home health care and would bill Medicare for related medical services, including office visits and diagnostic tests, that were not medically necessary and/or not provided.

10. **JORGE DIEPPA** would receive and keep the Medicare reimbursement payments for medical services related to prescribing home health care, including office visits and diagnostic tests, paid to him at the DIEPPA Clinics in return for signing prescriptions for home health, medical certifications and POCs for the referred beneficiaries.

11. **DIANA SANABIA, DAISY SANTOS, YANISLEY CHAO, MARLENE MAGADAN, MARIA PEREZ, ROBERTO RODRIGUEZ, ALBERTO ALVAREZ,** and **LEONARDO MALAGON** would falsify patient files to make it appear that Medicare beneficiaries qualified for and received home health services that in reality were not medically necessary and/or not provided.

12. Co-conspirators at Miami-area HHAs would submit and cause the submission of

-11-

false and fraudulent bills to the Medicare program for home health services that were not medically necessary and/or not provided.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-6
### Kickbacks
### (42 U.S.C. § 1320a-7b(b)(1))

1.     Paragraphs 1 through 25 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates enumerated below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, as set forth in each count below, did knowingly and willfully solicit and receive remuneration, that is, kickbacks and bribes, directly and indirectly, in the form of cash and checks, in return for referring an individual to a person for the furnishing and arranging for the furnishing of items and services for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, and in return for the purchasing, leasing, and ordering of goods, items, and services for which payment may be made in whole and in part under a Federal health care program, that is, Medicare:

| Count | Defendant | On or About Date | Approximate Amount of Kickback Received |
|-------|-----------|------------------|------------------------------------------|
| 2 | DIANA SANABIA | 3/04/08 | $3,900 |
| 3 | DIANA SANABIA | 5/01/08 | $4,700 |
| 4 | DAISY SANTOS | 5/02/06 | $4,644 |
| 5 | DAISY SANTOS | 5/30/06 | $5,445 |
| 6 | ALFREDO ZAYAS | 6/2007 | $1,200 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1) and Title 18, United States Code, Section 2.

-12-

## COUNTS 7-14
### False Statements for Use in
### Determining Rights for Benefit and Payment by Medicare
### (42 U.S.C. § 1320a-7b(a)(2))

1.       Paragraphs 1 through 25 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.       On or about the dates enumerated below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, as set forth in each count below, did knowingly and willfully make and cause to be made false statements and representations of material facts, as set forth below, in patient files for the beneficiaries set forth below, for use in determining rights to any benefit and payment under a Federal health care program, that is, Medicare:

| Count | Defendant | On or About Date of Nursing Notes or POC | Medicare Beneficiary | False Statement and Representation |
|---|---|---|---|---|
| 7 | **ROBERTO RODRIGUEZ** | 7/13/07 | ALFREDO ZAYAS | Documenting skilled nursing services including, but not limited to, an insulin injection |
| 8 | **ROBERTO RODRIGUEZ** | 7/23/07 | ALFREDO ZAYAS | Documenting skilled nursing services including, but not limited to, an insulin injection |
| 9 | **ALBERTO ALVAREZ** | 10/05/07-12/03/07 | E.R. | Patient unable to self-inject due to blindness |
| 10 | **LEONARDO MALAGON** | 12/04/07-12/29/07 | J.S. | Documenting hand tremors and unsafe ambulation |
| 11 | **DIANA SANABIA** | 1/13/08-3/15/08 | J.S. | Documenting hand tremors, ambulates with assistance, and requires assist device |

| Count | Defendant | On or About Date of Nursing Notes or POC | Medicare Beneficiary | False Statement and Representation |
|-------|-----------|------------------------------------------|----------------------|------------------------------------|
| 12 | **MARLENE MAGADAN** | 4/06/08-4/12/08 | J.S. | Documenting hand tremors, ambulates with assistance, and requires assist device |
| 13 | **MARIA PEREZ** | 8/04/08-9/27/08 | L.A. | Documenting unsteady gait and ambulates with assistance |
| 14 | **JORGE DIEPPA** | 1/14/08 | J.S. | Certified patient has unsteady gait and fine hand tremors |

In violation of Title 42, United States Code, Section 1320a-7b(a)(2) and Title 18, United States Code, Section 2.

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

1.      The allegations contained in Count 1 this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which **JORGE DIEPPA, DIANA SANABIA, DAISY SANTOS, YANISLEY CHAO, MARLENE MAGADAN, MARIA PEREZ, ROBERTO RODRIGUEZ, ALBERTO ALVAREZ, LEONARDO MALAGON,** and **ALFREDO ZAYAS,** have an interest.

2.      Upon conviction of Count 1, as alleged in this Indictment, the defendants, **JORGE DIEPPA, DIANA SANABIA, DAISY SANTOS, YANISLEY CHAO, MARLENE MAGADAN, MARIA PEREZ, ROBERTO RODRIGUEZ, ALBERTO ALVAREZ, LEONARDO MALAGON,** and **ALFREDO ZAYAS,** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross

-14-

proceeds traceable to the commission of the offense pursuant to Title 18, United States Code, Section 982(a)(7).

All pursuant to Title 18, United States Code, Sections 982(a)(7) and the procedures outlined in Title 21 United States Code, Section 853, as incorporated by Title 18 United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
HANK BOND WALTHER
ACTING DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
JOSEPH S. BEEMSTERBOER
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

**CASE NO.** _____

vs.

JORGE DIEPPA, et al.,

**CERTIFICATE OF TRIAL ATTORNEY***

                          Defendants.
_____/          **Superseding Case Information:**

**Court Division**: (Select One)          New Defendant(s)          Yes _____   No _____
                                          Number of New Defendants          _____
X    Miami ____ Key West                  Total number of counts            _____
____ FTL   ____ WPB   ____ FTP

        I do hereby certify that:

        1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

        2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

        3.    Interpreter:     (Yes or No)      Yes
              List language and/or dialect      Spanish

        4.    This case will take      20     days for the parties to try.

        5.    Please check appropriate category and type of offense listed below:

              (Check only one)                              (Check only one)

        I     0  to  5 days          _____          Petty          _____
        II    6  to 10 days          _____          Minor
        III   11 to 20 days            X             Misdem.        _____
        IV    21 to 60 days          _____          Felony           X
        V     61 days and over       _____

        6.    Has this case been previously filed in this District Court?  (Yes or No)      NO
        If yes:
        Judge: _____          Case No. _____
        (Attach copy of dispositive order)
        Has a complaint been filed in this matter?          (Yes or No)      NO
        If yes:
        Magistrate Case No. _____
        Related Miscellaneous numbers: _____
        Defendant(s) in federal custody as of _____
        Defendant(s) in state custody as of _____
        Rule 20 from the _____          District of _____

        Is this a potential death penalty case? (Yes or No)      NO

        7.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  _____ Yes    X   No

        8.    Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?  _____ Yes    X   No

                                          _____
                                          JOSEPH S. BEEMSTERBOER
                                          DOJ TRIAL ATTORNEY
                                          Court No. A5501439

*Penalty Sheet(s) attached                                              REV 4/8/08

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**  JORGE DIEPPA

**Case No**:

**Count  #: 1**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**:    10 years' imprisonment

**Count  #: 14**

False Statements for Use in Determining
Rights for Benefit and Payment by Medicare

42 U.S.C. § 1320a-7b(a)(2)

**\* Max.Penalty**:    5 years' imprisonment

Count  #:

**\*Max. Penalty:**

Count  #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**  DIANA SANABIA

**Case No**:

**Count #: 1**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**:        10 years' imprisonment

**Counts #: 2 - 3**

Kickbacks

42 U.S.C. § 1320a-7b(b)(1)

**\* Max.Penalty**:        5 years' imprisonment as to each count

**Count #: 11**

False Statements for Use in Determining
Rights for Benefit and Payment by Medicare

42 U.S.C. § 1320a-7b(a)(2)

**\* Max.Penalty**:        5 years' imprisonment

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**  DAISY SANTOS

**Case No:**

**Count #: 1**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty:**   10 years' imprisonment

**Counts #: 4 - 5**

Kickbacks

42 U.S.C. § 1320a-7b(b)(1)

**\* Max.Penalty:**   5 years' imprisonment as to each count

**Count #:**

**\*Max. Penalty:**

**Count #:**

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

Defendant's Name:_YANISLEY CHAO_

Case No: _____

Count #: 1

_____Conspiracy to Commit Health Care Fraud_____

_____18 U.S.C. § 1349_____

\* Max.Penalty:_____10 years' imprisonment_____

Count #:

_____

_____

\*Max. Penalty:_____

Count #:

_____

_____

\*Max. Penalty:_____

Count #:

_____

_____

\*Max. Penalty:_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**  MARLENE MAGADAN

**Case No:** _____

**Count #: 1**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty:**    10 years' imprisonment

**Count #: 12**

False Statements for Use in Determining
Rights for Benefit and Payment by Medicare

42 U.S.C. § 1320a-7b(a)(2)

**\* Max.Penalty:**    5 years' imprisonment

Count #:



**\*Max. Penalty:**

Count #:



**\*Max. Penalty:**


**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** MARIA PEREZ

**Case No:**

**Count #: 1**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty:**   10 years' imprisonment

**Count #: 13**

False Statements for Use in Determining
Rights for Benefit and Payment by Medicare

42 U.S.C. § 1320a-7b(a)(2)

**\* Max.Penalty:**   5 years' imprisonment

Count #:


**\*Max. Penalty:**

Count #:


**\*Max. Penalty:**


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:  ROBERTO RODRIGUEZ

**Case No**:

**Count #: 1**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**:     10 years' imprisonment

**Counts #: 7 - 8**

False Statements for Use in Determining
Rights for Benefit and Payment by Medicare

42 U.S.C. § 1320a-7b(a)(2)

**\* Max.Penalty**:     5 years' imprisonment as to each count

Count #:



**\*Max. Penalty:**

Count #:



**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   ALBERTO ALVAREZ

**Case No**:

**Count #: 1**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty**:   10 years' imprisonment

**Count #: 9**

False Statements for Use in Determining
Rights for Benefit and Payment by Medicare

42 U.S.C. § 1320a-7b(a)(2)

**\* Max.Penalty**:   5 years' imprisonment

Count #:




**\*Max. Penalty:**

Count #:




**\*Max. Penalty:**


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**  LEONARDO MALAGON

**Case No**:

**Count #: 1**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty:**   10 years' imprisonment

**Count #: 10**

False Statements for Use in Determining
Rights for Benefit and Payment by Medicare

42 U.S.C. § 1320a-7b(a)(2)

**\* Max.Penalty**:   5 years' imprisonment

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**  ALFREDO ZAYAS

**Case No:** _____

**Count #: 1**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\* Max.Penalty:**  10 years' imprisonment

**Count #: 6**

Kickbacks

42 U.S.C. § 1320a-7b(b)(1)

**\* Max.Penalty:**  5 years' imprisonment

**Count #:**

**\*Max. Penalty:**

**Count #:**

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**